Rafael Solis INFANTE, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–98–01408–CR, 01–98–01409–CR.

Court of Appeals of Texas, Houston (1st Dist.).

July 13, 2000.

Norman J. Silverman, Houston, for appellant.

Dan McCrory, John B. Holmes, Dist. Atty., Houston, for State.

Panel consists of Justices O'CONNOR, TAFT, and SMITH.[1]

## OPINION

TIM TAFT, Justice.

In cause number 9823444 (our cause number 01–98–01409–CR), Rafael Solis Infante, appellant, was charged with failing to stop and give information. In cause number 9823445 (our cause number 01–98–01408–CR), appellant was charged with making a false report to a police officer. Following a joint trial, a jury found appellant guilty of both offenses, and the trial court assessed punishment at 180–days confinement and a $1000 fine in each case. The issue on appeal is whether the trial court improperly took into account appellant's alienage in assessing punishment. We affirm.

1. The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District

## Facts

■ At the punishment phase of the trial, the prosecutor was allowed to ask, over appellant's objection, if appellant was an illegal alien. The prosecutor asked the question several times because appellant's answers were mostly non-responsive. Appellant denied that he was an illegal alien, but claimed he was getting the problem corrected with his paper work. He also claimed to have a permit to work. In assessing punishment, the trial court stated his reasons for assessing the maximum punishments:

> The facts of this case are egregious . . . . you rear ended a family . . . . you did not even have the decency as a human being to go see whether or not as a result of your gross misconduct whether they were, in fact, injured or not. . . . Then you tried to cover up through some lie and malfeasance to also include your own wife. And through Police investigation, not through any of your efforts, they confronted you, not from anything you did or volunteered to do as your lawyer suggested. Therefore I hereby sentence you to a hundred and eighty days in the Harris County Jail in each of these.

After assessing punishment the trial court stated that it would recommend appellant be deported following satisfaction of the judgment. Appellant filed a motion for new trial stating the trial court had erred in admitting into evidence allegations that appellant was an illegal alien and in finding that appellant was an illegal alien. The motion for new trial was denied.

## Consideration of Alienage

In point of error one, appellant claims that in both causes, the trial court took appellant's alienage into consideration in assessing the maximum punishment, in violation of his Fourteenth Amendment due process rights. Appellant contends that, in overruling appellant's objection to the

of Texas at Houston, participating by assignment.

State's question concerning alienage, the trial court expressly ruled that appellant's status as an illegal alien was relevant to the proceedings. Appellant further contends that the trial court's statement that deportation would be recommended, after satisfaction of the sentence, is evidence that alienage was a basis for assessing punishment.

Appellant relies on several federal circuit courts of appeals cases which have found consideration of alienage improper in punishment, unless connected to the facts of the case. *See United States v. Gomez*, 797 F.2d 417, 420 (7th Cir.1986) ("The nationality of Gomez and his illegal entry and entrance into the illicit business are too related to be artificially separated for sentencing purposes."); *United States v. Onwuemene*, 933 F.2d 650, 652 (8th Cir.1991) (vacating district court's sentence because it relied on alien status as a factor in assessing punishment); *United States v. Borrero–Isaza*, 887 F.2d 1349, 1355 (9th Cir.1989) (vacating district court's sentence for taking into account that the defendant was from a "source country" in assessing punishment for a drug-trafficking violation).

In the line of cases upon which appellant relies, the trial court expressly took into account the defendant's alienage in assessing punishment. In the present case, the record is devoid of any evidence that the trial court took into account the appellant's alienage in assessing punishment. More important, however, is the distinction between considering a defendant's status as an illegal alien and a defendant's alienage. Appellant mistakenly equates the two.

■ Unsanctioned entry into the United States is a crime subject to fine and imprisonment. 8 U.S.C. § 1325 (1994 & Supp. IV 1998). Unregistered presence in this country, without more, also constitutes a crime. *See id.; Immigration and Naturalization Service v. Lopez–Mendoza*, 468 U.S. 1032, 1047, 104 S.Ct. 3479, 3487, 82 L.Ed.2d 778 (1984). The difference between asking a defendant if he is an "ille-gal alien" and asking a defendant about his alienage is that the former question is an inquiry into his legal status, while the latter serves only to discover the defendant's nationality. The former question serves the purpose of discovering whether a defendant is, in fact, committing a crime. The latter serves no such purpose. Thus, to allow a prosecutor to ask about an alien's legal status in this country at the punishment stage is proper pursuant to article 37.07, section 3(a), of the Code of Criminal Procedure. TEX.CODE CRIM. P. art. 37.07 § 3(a) (Vernon Supp.2000) (allowing evidence of extraneous offenses).

If the trial court had taken appellant's status as an illegal alien into account, no error would have been committed. Nevertheless, the record does not establish that appellant was an illegal alien or that the trial court considered him to be one, much less that the trial court took appellant's status into account in assessing punishment.

We overrule appellant's first point of error.

### State Constitution Violation

■ In his second point of error, appellant contends the trial court's assessment of punishment was in violation of his due course of law rights guaranteed by the state constitution. Appellant offers no case law or any other authority to support the contention that the ruling was in violation of the state constitution. Appellant's position is solely that the Texas Constitution can offer no less protection than the United States Constitution, thus requiring the court to address appellant's claim that his alienage played an adverse role in his sentencing, and, only upon the conclusion that the Texas Constitution does not provide greater protection should the court dismiss appellant's complaint. Where an appellant presents no argument or authority as to how the protection offered by the Texas Constitution differs from the protection guaranteed by the United States Con-

stitution, his claim is inadequately briefed and presents nothing for our review. *Rhoades v. State,* 934 S.W.2d 113, 120 (Tex.Crim.App.1996) Because appellant has not demonstrated why or how the Texas Constitution provides greater protection, we overrule his second point of error.

## Conclusion

We affirm the judgment of the trial court.