**Opinion issued October 11, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-15-00492-CR

———————————

**JOSE MARTIR HERNANDEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 6**
**Harris County, Texas**
**Trial Court Case No. 1933745**

---

## MEMORANDUM OPINION

A jury convicted appellant, Jose Martir Hernandez, of misdemeanor assault of a family member, and the trial court assessed punishment at confinement for one year, which was suspended while appellant was under community supervision for two years. In eight issues on appeal, appellant complains about (1) a variance

between the information and the proof; (2) the trial court's comment on the evidence; (3) & (6) hearsay evidence; (4) relevancy; (5) post-arrest silence; (7) & (8) a verdict on alternative theories. We affirm.

## BACKGROUND

Early in the morning of December 8, 2014, appellant caught his adult daughter sneaking back into the house through a window and a loud argument between the two ensued, waking the household. When appellant's wife tried to calm appellant and her daughter, appellant pushed his wife, causing her pain and leaving a red mark on her skin. When his wife tried to flee into the bedroom, appellant blocked her way and kicked her.

After receiving a 911 call from the home, police arrived, removed appellant from the house, put him in the police car, and then questioned the other members of the household. After completing their investigation, police arrested appellant and charged him with misdemeanor assault of his wife.

## SUFFICIENCY OF THE EVIDENCE

In his first issue on appeal, appellant contends the evidence is legally insufficient because (1) there was a variance between the complainant's name in the information and the complainant's name at trial, and (2) there was only hearsay evidence of an assault, but no direct testimony. We address each argument in turn.

## A. Standard of Review

We review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the jury's verdict to determine whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). We give deference to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams*, 235 S.W.3d at 750. However, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Id.*

## B. Variance

The information charged appellant with "unlawfully intentionally and knowingly caus[ing] bodily injury to IVIANNA HERNANDEZ, a member of the Defendant's family[.]" When the complainant testified at trial, the court reporter transcribed her name as "Ivianna Hernandez." However, on cross-examination, the complainant clarified that her name was spelled "I-v-a-n-i-a." Appellant contends

3

that the evidence is insufficient because of the variance between the complainant's name as alleged in the information and what she testified to at trial.

A "variance" occurs when there is a discrepancy between the allegations in the indictment and the proof offered at trial. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011). When faced with a sufficiency-of-the-evidence claim based upon a variance between the indictment and the proof, only a material variance will render the evidence insufficient and thus require reversal. *Gollihar v. State*, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001). A variance is material only if it prejudices the defendant's substantial rights. *Id.* In determining whether a defendant's substantial rights have been prejudiced, two questions are asked:

> When reviewing such a variance, we must determine whether the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial, and whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime.

*Id.* at 257 (quoting *United States v. Sprick*, 233 F.3d 845, 853 (5th Cir. 2000)). It is the defendant's burden to demonstrate prejudice to a substantial right. *Santana v. State*, 59 S.W.3d 187, 194 (Tex. Crim. App. 2001).

Appellant was provided adequate notice of the charges against him. The information charged appellant with assault of a family member, and the evidence identified the complainant as appellant's wife. Any variance between the spelling of his wife's name in the information and the evidence at trial did not operate as a

4

surprise to appellant or prejudice his substantial rights. *See Fuller v. State*, 73 S.W.3d 250, 252 (Tex. Crim. App. 2002) (holding no material variance between indictment referring to complainant as "Olen M. Fuller" and proof referring to complainant as "Buddy Fuller"). There is no indication in the record that appellant did not know whom he was accused of assaulting or that he was surprised by the complainant's true name. *See Fuller*, 73 S.W.3d at 254.

Additionally, appellant is in no danger of being prosecuted later for the same assault on a family member. *See Gollihar*, 46 S.W.3d at 258 (citing *United States v. Apodaca*, 843 F.2d 421, 430 n.3 (10th Cir. 1988) (entire record, not just charging instrument, may be referred to in protecting against double jeopardy in event of subsequent prosecution). The record in this case makes clear that appellant was tried for the assault of his wife, and he cannot be charged again for the same assault, no matter how her name is spelled.

Accordingly, we conclude that the variance at issue was not material, and therefore the evidence is sufficient to sustain appellant's conviction. *See Gollihar*, 46 S.W.3d at 257 (holding that only a "material" variance will render evidence insufficient to support conviction).

## C.  No Direct Testimony, Only Hearsay

Appellant also claims the evidence is legally insufficient because there was "no sworn testimony regarding the assault." Specifically, appellant claims that

since the complainant recanted and testified at trial that the appellant did not assault her, there was no evidence that an assault took place. Appellant contends that hearsay statements that the complainant made to the police on the day of the event cannot be considered as evidence.

In this case, the arresting officer testified that the complainant told him that appellant had pushed her and kicked her. The officer also saw an injury on the complainant's shoulder that corroborated what the complainant had told him. When the complainant testified at trial, she denied that appellant assaulted her. However, she admitted that, on the day of the offense, she had told the police that appellant assaulted her.

We reject appellant's argument that his wife's out-of-court statements to police cannot be considered in reviewing the legal sufficiency of the evidence. Hearsay evidence has probative value and can be sufficient to support a conviction. *Poindexter v. State*, 153 S.W.3d 402, 409 (Tex. Crim. App. 2005); *see also Fernandez v. State*, 805 S.W.2d 451, 456 (Tex. Crim. App. 1991) (hearsay evidence legally sufficient to support conviction despite fact that declarant testified and recanted out-of-court statement).

Having overruled both of appellant's challenges to the legal sufficiency of the evidence, we overrule his first point of error.

# COMMENT ON THE EVIDENCE

## A. Background

At trial, appellant's daughter, Jennifer Hernandez, was asked whether she saw any assault, to which she replied, "No, I don't think I did. I don't think I saw any assaults." She was then asked whether she told police that she saw her father hit her mother, and she replied, "No, I don't think I told them I saw him hit my mother." At this point, the trial court interrupted her and the following colloquy took place:

> [Trial Court]: Hold on. You're under oath, and it's a big difference to say, "No, I don't think I said that I saw." I want you to think real hard on these questions. You never knew a guy named Will Rogers, did you?
>
> [The Witness]: No.
>
> [Trial Court]: He had an old saying that, "If all people did was tell the truth, they wouldn't have to remember anything." Now—
>
> [Defense Counsel]: Judge, I'm going to object. Could we approach?
>
> [Trial Court]: Not yet. What I want you to do is, understand the difference in remembering that you saw something and whether or not you saw it. Y'all be careful about how you ask the question. That's all I'm talking about.
> "Do you remember telling the officer" or "did you see this?" That's what I'm talking about. Does that clear it up for you?
>
> [Defense counsel]: Not yet, Judge.
>
> [Trial Court]: That's the main thing. Somebody's going to say, "I don't remember seeing something." Now we're talking about saying something. That's all I'm talking about. It's up to this jury to

determine whether or not somebody's telling the truth or not. That's all I'm trying to do.

Thank you. Move on.

After a few more questions, the trial court had the bailiff remove the jury and the following exchange took place at the bench.

[Trial Court]: Back to the other thing. I know what you thought I was doing; and in an abundance of caution, I don't want there to be any inference of that. In terms of talking to a witness, sidebar, anything like that because that's never my intention.

In this situation—part of the problem . . . is that I don't know what you're not leading; and I'm not saying this—and counsel for the defense knows me well enough to know, I'm not doing this right here as a help you get a tip thing. If I do anything like this, it's in the middle of trial, on the record, with both sides. I, certainly don't, unlike some colleagues that have been accused of doing, help either side. It is completely unethical and wrong.

My point is, counsel for the defense knows what it's like to lead. He's been leading his own witnesses, which is fair game if you can get away with it; but if you lead the witness rather than asking them to recall this or that, it's much more clear and straightforward. If you say something like, "Isn't it a fact, ma'am, that you told officer so-an-so, blah blah?"

It's a "yes" or "no" answer, and we move on. It's the same effect. If you want to keep asking open-ended, wish-washy questions, we're going to get bogged down into, "Did you remember seeing it or hearing it or did you actually hear it or say it?"

[Prosecutor]: Yes, Judge.

[Trial Court]: It's your call. It doesn't make any difference, but now we've got the whole interpreter situation, which we may not have, I don't know, and it would—everybody's got their role. I'm used to hearing, when you pass it, they lead. When you're doing yours, it's who, what, when, where and how.

I know that you're—I see what you're saying. This is your witness. I think it's kind of fair to say, she's kind of adverse; and I don't know why it's not being done more. The other lady was hands-

down adverse. That's all I'm going to say. You try your case, but we're getting caught up in the Tower of Babel here. That's all I'm going to say.

Anything, Counsel?

[Defense Counsel]: Yes, Judge, for the record what my objection was during the Court's interlude with the witness, it appeared to me—and I understand what the Court's deeper thought process may have been—but it sounded like from where I was sitting that what the Court was doing was—could be seen as instructing the witness not to lie.

[Trial Court]: No.

[Defense Counsel]: Okay.

[Trial Counsel]: That's why I backed off real quick. After you objected, I said hold on. This could be seen that way, and I backed off. So, yes, I agree with you it could be seen that way. I immediately backed off and took another tack. I apologize for that. I don't think the jury picked up on anything.

It certainly didn't change her in any way because she kept right on testifying as to what she was doing. So, it's up to you, if you want to make a bill or whatever; but I don't see an issue there. I just don't.

[Defense Counsel]: Not to make a bill, Judge. I just want to make clear that my objection is that it may have appeared to the jury that the Court somehow—

[Trial Court]: Sure.

[Defense Counsel]: had an opinion as to whether the witness was being truthful or not truthful in her testimony.

That's obviously not the place of the Court as you said moments ago.

[Trial Court]: Right.

[Defense Counsel]: Each of us have our place in this trial. We would request an instruction be given to the jury that they are not to consider any colloquy between the Court and the witness or between the Court

9

and either of the counsel to be any indication as to the Court's personal feelings about anything that the witness is saying.

[Trial Court]: No, you don't want me saying something like that. It's my personal—first of all, I haven't done any—between him and me, whatever. I took the jury out. They aren't even here. To go back? I mean, if you want me to say something in terms of that other thing, I will. I'll be happy to, but I don't know if I would say it like you said. That's just calling attention to something that doesn't need to have attention called to it.

If you can craft some articulate instruction—I mean that in the most respectful way—instruction to the jury, I don't know that it's necessary at this point since so much time has gone by. Tell me what you want me to say.

[Defense Counsel]: Basically along the lines of instructing the jury that any—

[Trial Court]: What if I say something like "Ladies and gentlemen of the jury, during the portion of the trial in which you saw me speaking with the witness who is testifying—who had just testified and will be brought back in to testify, reasonable minds may differ; but I'm instructing you not to consider —" take it from there.

[Defense Counsel]: Not even go into the "reasonable minds may differ." Just "for the record, members of the jury, you are instructed not to consider any conversation between the Court and witness for—

[Trial Court]: For any purpose whatsoever?

[Defense Counsel]: Yes.

[Trial Court]: All right. I'll do that.

When the jury returned to the courtroom, the trial court instructed them that "you are not to consider anything for any purpose whatsoever that I said to the lady

10

that's testifying here where I kind of had an aside with her. You're not to consider that for any purpose whatsoever." Appellant made no further objection.

In his second point of error, appellant contends that "the trial court impermissibly commented on the evidence, reminding a witness, in the presence of the jury, that she was under oath."

## B. Applicable Law

A judge in a jury trial is a neutral party and should not give any indication to the jury of his own beliefs about the credibility or weight of the evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.05 (West 2010) (prohibiting judge from commenting on weight of evidence beyond determining admissibility). A trial judge improperly comments on the weight of the evidence if he makes a statement that (1) implies approval of the State's argument; (2) indicates any disbelief in the defense position; or (3) diminishes the credibility of the defense's approach to the case. *Clark v. State*, 878 S.W.2d 224, 226 (Tex. App.—Dallas 1994, no pet.).

## C. Analysis

Appellant's complaint about the trial court's asserted comment on the weight of the evidence is waived because appellant did not take the necessary steps to preserve error. *See* TEX. R. APP. P. 33.1; *Brooks v. State*, 642 S.W.2d 791, 798 (Tex. Crim. App. 1982) (stating the proper method of pursuing an objection until an adverse ruling is to object, request an instruction to disregard, and move for a

11

mistrial). Here, appellant may not complain because he received all of the relief he requested, i.e., the trial court gave the jury the exact instruction requested by appellant, and appellant made no further objection. Hence, there was no adverse ruling. Failure to request further relief after an objection is sustained preserves nothing for review. *Henderson v. State*, 617 S.W.2d 697, 698 (Tex. Crim. App. 1981).

Accordingly, we overrule appellant's second point of error.

## HEARSAY

In points of error three and six, appellant contends the trial court erred by permitting the arresting officer, Officer Vela, to testify about out-of-court statements (1) by appellant's wife and (2) by other people at the scene that were consistent with appellant's wife's statements.

### A. Standard of Review and Applicable Law

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). As a general rule, hearsay is inadmissible except as provided by the rules of evidence or by statute. TEX. R. EVID. 802; *Garcia v. State*, 868 S.W.2d 337, 339 (Tex. Crim. App. 1993).

We review a trial court's decision to admit testimony over a hearsay objection under an abuse of discretion standard. *Zuliani v. State*, 97 S.W.3d 589,

595 (Tex. Crim. App. 2003); *Coffin v. State*, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994). A trial court is in the best position to determine whether evidence should be admitted or excluded. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). Consequently, we will not disturb the ruling "as long as the trial court's decision was within the zone of reasonable disagreement." *Id.*

Improper admission of evidence is non-constitutional error that we disregard unless the error affects an appellant's substantial rights. TEX. R. APP. P. 44.2(b); *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004). Under rule 44.2, "an appellate court may not reverse for non-constitutional error if the court, after examining the record as a whole, has fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict." *See Garcia*, 126 S.W.3d at 927. Moreover, trial court error due to improper admission of evidence may be rendered harmless if other evidence is admitted without objection and it proves the same fact or facts that the inadmissible evidence sought to prove. *See Mack v. State*, 928 S.W.2d 219, 225 (Tex. App.—Austin 1996, writ ref'd) (improper admission of evidence not harmful error if same or similar evidence admitted without objection); *see also Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003) (error in admission of evidence is cured where same evidence comes in elsewhere without objection).

**B. Analysis—Appellant's Wife's Statements to Police**

Officer Vela was allowed to testify, over appellant's hearsay objection, that appellant's wife told him at the scene that appellant had punched her and kicked her. Appellant argues on appeal that these statements were inadmissible hearsay and not a qualifying prior inconsistent statement under TEX. R. EVID. 801(e)(1)(A). However, as appellant concedes in his brief, appellant's wife had previously testified, admitting that she told police at the scene that appellant had punched and kicked her. Thus, error, if any, of appellant's wife's statements to police at the scene was cured because the same evidence was admitted through her own testimony without objection. *See Valle*, 109 S.W. 3d at 509.

**C. Analysis—"Consistent" Statements by Others at the Scene**

Officer Vela testified that, at the scene of the offense, he spoke to Sylvia Hernandez, Jennifer Hernandez, Ashley Hernandez, and Jose David Hernandez. Vela was then permitted to testify, over appellant's hearsay objection, that he arrested appellant at the scene, in part, because of "everybody's" consistent statements. The State contends that the admission of such evidence was not hearsay because it was not offered for the truth of the matter asserted.

We agree with the State. In *Jones v. State*, the officer testified that he sought an arrest warrant after hearing another officer interview someone else. 843 S.W.2d 487, 499 (Tex. Crim. App. 1992), *abrogated on other grounds by Maxwell v. State*,

14

48 S.W.3d 196 (Tex. Crim. App. 2001). On appeal, the defendant argued that the officer's testimony was based on hearsay, i.e., the statements of the person he saw interviewed. *See id.* The court of criminal appeals disagreed, holding that "the statement was not offered to prove the truth of the matter asserted, but to show why the officer got an arrest warrant for and arrested appellant[.]" *Id.*

The same is true here. Officer Vela's testimony is relevant, not to show the truth of the statements made by those he interviewed at the scene, but to show why Officer Vela arrested appellant, i.e., because the statements given by the witnesses were consistent. *See Head v. State*, 4 S.W.3d 258, 262–63 (Tex. Crim. App. 1999) (holding trial court did not abuse discretion in admitting officer's testimony that witnesses gave "consistent" statements because testimony did not convey substance of witnesses statements, only "that the facts themselves were uniform").

Further, even if the testimony was erroneously admitted, it did not affect appellant's substantial rights. *See* TEX. R. APP. 44.2(b). Appellant's wife had already testified that she told police that appellant hit her and kicked her, and the police had noticed a red mark on her that corroborated her testimony. That others gave "consistent" statements is no more harmful to appellant than the complainant's own statement.

Accordingly, we overrule points of error three and six.

**RELEVANCY**

At trial, Officer Vela testified over appellant's relevancy objection, that appellant's family did not try to stop the officer from arresting appellant. In his fourth point of error on appeal, appellant argues that the testimony was irrelevant because there may have been "a variety of reasons that Appellant's family did not attempt to stop the police officer from arresting him."

**A. Standard of Review and Applicable Law**

Evidence which is not relevant is inadmissible. TEX. R. EVID. 402. Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX. R. EVID. 401. We review the trial court's ruling on the relevancy and probative value of evidence for an abuse of discretion. *See Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

**B. Analysis**

The State argues that appellant's family's lack of reaction to his arrest is relevant to show that they were not surprised when he was arrested because a violent altercation had taken place. We agree that the family's lack of a reaction to appellant's arrest has a tendency to make it more probable that an assault had taken place. Had appellant done nothing wrong, it is reasonable to assume that his family would have protested his arrest. Thus, the trial court did

16

not abuse its discretion in admitting the testimony after concluding that it was relevant.

We overrule point of error four.

## POST-ARREST SILENCE

At trial, appellant testified in his own behalf. On cross-examination, the State asked, over appellant's objection, "you never asked the officer why you were being handcuffed" and "you never asked the officer why you were being arrested." In his fifth point of error, appellant contends that this line of questioning was an improper comment on his post-arrest silence.

### A. Standard of Review and Applicable Law

A comment on a defendant's post-arrest silence violates his Fifth Amendment privilege against self-incrimination. *See* U.S. CONST. amend. V; *Dinkins v. State*, 894 S.W.2d 330, 356 (Tex. Crim. App. 1995). When confronted with such an error, we must reverse unless we conclude beyond a reasonable doubt that the error did not contribute to appellant's conviction or punishment. TEX. R. APP. P. 44.2(a); *Snowden v. State*, 353 S.W.3d 815, 818, 822 (Tex. Crim. App. 2011). If there is a reasonable likelihood that the error materially affected the jury's deliberations, then the error is not harmless beyond a reasonable doubt. *McCarthy v. State*, 65 S.W.3d 47, 55 (Tex. Crim. App. 2001). Our focus is on the error itself in the context of the trial as a whole, to determine the likelihood that the

17

error "genuinely corrupted the fact-finding process." *Snowden*, 353 S.W.3d at 819; *see also Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007) (entire record must be considered in harmless error analysis).

## B. Analysis

Here, the State's question was involving appellant's silence at the time he was handcuffed. Although a defendant's silence after he invokes his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966), cannot be used to impeach his testimony at trial, *see Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240 (1976), the Fifth Amendment is not implicated when a defendant who testifies in his own defense is impeached with pre-*Miranda* silence. *See Jenkins v. Anderson*, 447 U.S. 31, 100 S. Ct. 2124 (1980); *Cisneros v. State*, 692 S.W.2d 78, 84–85 (Tex. Crim. App. 1985). There is nothing in the record to show that appellant had yet been advised of his right to remain silent under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966). The record shows that appellant was handcuffed and placed in a police car, where he waited for 30 to 45 minutes while the officer returned to the house to complete his investigation. Nothing in the record suggests that appellant had been advised of, or had invoked, his right to remain silent under *Miranda*.

Additionally, appellant had already testified extensively about his attempted exchange with the officer, and appellant's resulting silence, at the time he was arrested.

[Defense Counsel]: Did you try to explain to him that you hadn't interfered with any emergency call?

[Appellant]: Yes, but he did not allow me.

[Defense Counsel]: Okay. What did he do to stop you from talking to him?

[Appellant]: He said bad words. According to me, it's a bad word.

[Defense Counsel]: Okay. And, so, did you try to explain anything else to him after that?

[Appellant]: He did not allow me.

. . . .

[Prosecutor]: And you stated that Officer Vela was inside the house for about 30 to 45 minutes after he placed you in the car, right?

[Appellant]: Yes.

When a party introduces matters into evidence, he invites the other side to reply. *Kincaid v. State*, 534 S.W.2d 340, 342 (Tex. Crim. App. 1976). Thus, testifying about his exchange with the officer at the time of his arrest, appellant "opened the door" to the officer's testimony about the same exchange.

We overrule point of error five.

**VERDICT ON ALTERNATIVE THEORIES**

In two separate paragraphs, the information charged appellant with assaulting his wife by striking her with his foot and pushing her with his hand. The charge instructed the jury to find appellant guilty if it found that appellant caused bodily injury to his wife "by STRIKING THE COMPLAINANT WITH HIS FOOT or BY PUSHING THE COMPLAINANT WITH HIS HAND[.]" In two points of error, appellant contends that "the ability to find a defendant guilty when some of the jurors think that he committed one act, while the rest think he committed another, violates the requirement of due process under the Fifth and Fourteenth Amendments to the United States Constitution."

### A. Applicable Law

Under Texas law, jury unanimity is required in all criminal cases. *Jourdan v. State*, 428 S.W.3d 86, 94 (Tex. Crim. App. 2014). Unanimity in this context means each juror agrees that the defendant committed the same, single, specific criminal act. *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005). Jury unanimity is required on the essential elements of the offense, but is generally not required on the alternate modes or means of commission. *Pizzo v. State*, 235 S.W.3d 711, 714 (Tex. Crim. App. 2007) (citing *Jefferson v. State*, 189 S.W.3d 305, 311 (Tex. Crim. App. 2006)). It is proper for an indictment to allege different means of committing

the same offense and for the jury to be charged disjunctively. *See Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991).

## B. Analysis

The acts of striking with his foot or pushing with his hand are merely alternative means by which appellant may have committed the assault, and while jury unanimity is required as to the essential elements of the offense, the jury's decision need not be unanimous regarding alternate manner or means of commission. *See Davila v. State*, 346 S.W.3d 587, 590–91 (Tex. App.—El Paso 2009, no pet.) (holding that pulling victim's hair and grabbing victim's neck are alternate means or methods by which appellant committed assault of family member and did not violate unanimity requirement); *see also Agbor v. State*, No. 02–12–00401–CR, 2013 WL 1830679, at *3 (Tex. App.——Fort Worth May 2, 2013, no pet.) (mem. op., not designated for publication) (holding jurors not required to unanimously agree on whether the defendant struck victim with his hand, pulled her hair, or pushed her because all were "manners and means by which [the defendant] committed assault"); *Marinos v. State*, 186 S.W.3d 167, 175 (Tex. App.—Austin 2006, pet. ref'd) (holding, with respect to an aggravated assault conviction, that it was "not necessary . . . for the court to require the jurors to agree that appellant used a bag, or a piece of a bag, or his hand to inflict the bodily injury").

Because the jurors were not required to agree upon a single manner or means of committing the assault, appellant was not denied his right to a unanimous verdict.

Appellant also asks that we revisit *Mellinger v. City of Houston*, 3 S.W. 249 (Tex. 1887), and hold that "due course of law" under the state constitution is broader than "due process" under the federal constitution. We agree that the State may interpret its constitution to provide broader protection than the federal constitution. *See Heitman v. State*, 815 S.W.2d 681, 690 (Tex. Crim. App. 1991) (recognizing that "when analyzing and interpreting Art. I, § 9, TEX. CONST., will not be bound by Supreme Court decisions addressing the comparable Fourth Amendment issue"). However, when, as here, an appellant presents no argument or authority as to how the protection offered by the state constitution differs from the protection guaranteed by the federal constitution, his claim is inadequately briefed and presents nothing for appellate review. *Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996); *Infante v. State*, 25 S.W.3d 725, 727–28 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd).

We overrule points of error seven and eight.

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).